CORNELL STEAM-BOAT Co. *v.* THE H. L. DAYTON.

*(District Court, D. New Jersey.* May 25, 1889.)

TOWAGE—EVIDENCE.

Libelant had a claim against respondents for balance on towage, the amount due being disputed, and respondents had claims against libelant for damages. Negotiations failed to effect an agreement, and libelant placed its claim in the hands of a collector, and thereafter exacted cash payments for towage done for respondents. At this point it was agreed, as alleged by respondents, that their demands should be canceled. Libelant denied this agreement, and the agent of respondents testified that the agreement was made with an agent of libelant, who testified as positively to the contrary. From the time of the alleged compromise towing was again done on credit, and libelant did not include its disputed claim in its bills, and gave, by its agent, a receipt in full at one time, the agent also stating that it included all demands. *Held,* that the weight of evidence was with respondents.

In Admiralty. Libel for towage.

*Anson B. Stewart,* for libelant.

*Bedle, Muirheid & McGee,* for respondents.

WALES, J. The libelant company sue to recover a small balance due for towing the barge H. L. Dayton from Newburgh to New York, on the 22d of December, 1886. The original charge for the service, $40, was objected to by the respondents as being excessive, and they refused to pay more than $25. Before this time there had been other accounts between the parties for towage service, and the respondents, having subsequently ascertained that the sum demanded for towing through the ice was the customary one, allowed it, at the same time setting up counter-claims against the libelants for damages to the Mayflower,—another barge belonging to the respondents,—and also for demurrage; these last two claims being in excess of the balance of the libelants' charge of December 22d, and, if allowed, would leave a balance in favor of the respondents on an account stated. Several interviews were had between the parties in relation to a settlement without success, the libelants finally placing their claim in the hands of a collector, and thenceforward exacting cash payments for towing the respondents' barges, until, as alleged by the respondents, it was mutually agreed that the disputed claims should be canceled on both sides; and thereafter the libelants resumed and continued giving credit to respondents, as before, for towage services. The sum in controversy, $15, is a trifling one when compared with the amount of business transacted between these parties in the course of a year; but the case, being before the court, must be disposed of and decided according to the evidence.

The question to be decided is one of fact, and the decision depends, in part, on the veracity or accuracy of recollection of the managing agents of the litigants. The evidence for the respondents (testimony of the president of the respondent company) is that the agreement to wipe out the disputed claims on both sides was clear and unmistakable, and that, acting on the faith of that agreement, the charge for demurrage (the claim for damages having been allowed by libelants) was placed to profit and loss on the books of the respondents. The libelants' managing agent, Mr. Valentine, with whom it is alleged the agreement was made, directly and positively denies all knowledge of it. Here, then, is a flat contradiction between the only two witnesses who testify to the making of the agreement; and in such a case the only recourse is to the custom and practice of transacting business between the parties, and to such acts and admissions of their agents as may throw any light on the subject. It is in proof that after the alleged agreement the libelant company gave credit as before, and that the charge of $15, the balance of the sum charged for towing the Dayton, disappeared from the bills rendered to the respondents. It is also proved that, on the 20th of January, 1888, Mr. Hagadorn, the accredited collector for the libelant company, gave the respondents a receipt for $329, "to balance acc't in full up to date;" and, although an ordinary receipt of this kind is not always conclusive evidence of the payment of all demands, if given under a mistake, or in ignorance of material facts, yet it is in testimony that Mr. Hagadorn was asked, at the time of signing this receipt, if the amount included all demands, and he replied that it did. These circumstances certainly give color to the statement that the agreement to cancel was made. They also create too much doubt of the right of the libelants to recover, to permit of a decree being made in their favor. The libel must therefore be dismissed.